UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY GIRALDES, JR.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>D. BAUGHMAN, et al.,<br><br>　　　　Defendants. | No. 2:18-cv-1055 AC P<br><br>ORDER and<br><br>FINDINGS AND RECOMMENDATIONS |

I.     <u>Introduction</u>

Plaintiff is a state prisoner at California State Prison Sacramento (CSP-SAC), under the authority of the California Department of Corrections and Rehabilitation (CDCR), proceeding pro se with a First Amended Complaint filed pursuant to 42 U.S.C. § 1983, and a request to proceed in forma pauperis. For the following reasons, the court grants plaintiff's request to proceed in forma pauperis, recommends the dismissal of all defendants except Baughman, and directs plaintiff to submit the information necessary to serve process on defendant Baughman.

II.     <u>In Forma Pauperis Application</u>

Plaintiff has submitted an affidavit and his prison trust account statement that make the showing required by 28 U.S.C. § 1915(a). <u>See</u> ECF No. 2 (<u>see</u> <u>also</u> ECF No. 5 (trust account

////

////

1

statement).[1]  Accordingly, plaintiff's request to proceed in forma pauperis will be granted.

Plaintiff must nevertheless pay the statutory filing fee of $350.00 for this action with periodic deductions from his prison trust account. 28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's trust account.  These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

III.	Legal Standards

A.	Legal Standards for Screening Prisoner Civil Rights Complaint

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v.

---

[1] Plaintiff has filed a duplicate request to proceed in forma pauperis, ECF No. 7, which will be denied as moot.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly at 555).  To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'"  Iqbal at 678 (quoting Twombly at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (citing Twombly at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  Id. (quoting Twombly at 557).

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. '"  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotation marks omitted)).  See also Fed. R. Civ. P. 8(e) ("Pleadings shall be so construed as to do justice.").  Additionally, a pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment.  See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

B. Legal Standards for Stating a Cognizable Retaliation Claim

The Ninth Circuit Court of Appeals treats a prisoner's right to file a prison grievance as a constitutionally protected First Amendment right.  Brodheim v. Cry, 484 F.3d 1262, 1269 (9th Cir. 2009).  Filing administrative grievances and initiating litigation are constitutionally protected activities, and it is impermissible for prison officials to retaliate against prisoners for engaging in these activities.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see also Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011) (prisoners retain First Amendment rights not inconsistent with their prisoner status or penological objectives, including the right to file inmate appeals and the right to pursue civil rights litigation).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

3

exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (fn. and citations omitted). At the pleading stage, the "chilling" requirement is met if the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'" Id. at 568, quoting Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). Direct and tangible harm will support a First Amendment retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. Rhodes, at 568 n.11. "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action. Brodheim, 584 F.3d at 1269 (9th Cir. 2009) (citing Rhodes, 408 F.3d at 568, n.11).

Plaintiff need not prove that the alleged retaliatory action itself violated a constitutional right. Pratt v. Rowland, 65 F.3d 802, 806 (1995) (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 268 (9th Cir.1997) (upholding jury determination of retaliation based on filing of a false rules violation report); Rizzo v. Dawson, 778 F.2d 527, 531(transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim). Rather, the interest asserted in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive. However, not every allegedly adverse action will support a retaliation claim. See e.g. Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on "the logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this'") (citation omitted).

To sustain a retaliation claim, plaintiff must plead facts that support a reasonable inference that plaintiff's exercise of his constitutionally protected rights was the "substantial" or "motivating" factor behind the defendant's challenged conduct. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 419 U.S. 274, 287 (1977)). Plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the challenged conduct. Pratt, 65 F.3d at 806 (citing Rizzo, 778 F.2d at 532). Mere allegations of retaliatory motive or conduct will not suffice. A prisoner must

"allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990). Verbal harassment alone is insufficient to state a claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). Even threats of bodily injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act itself. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

### C. Required Linkage Between Defendant and Challenged Conduct

"A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978); see also Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.") (Citations omitted.) A complaint that fails to identify the specific acts of defendant that allegedly violated plaintiff's rights fails to meet the notice requirements of Rule 8(a). Hutchinson v. United States, 677 F.2d 1322, 1328 n.5 (9th Cir. 1982).

### IV. Screening of Plaintiff's First Amended Complaint

#### A. Plaintiff's Allegations

Plaintiff claims that eight defendants at CSP-SAC have retaliated against him, and continue to retaliate against him, in violation of his First Amendment right to pursue outside litigation. The First Amended Complaint (FAC) identifies prior successful civil rights actions brought by plaintiff resulting, inter alia, in monetary relief and personal medical accommodations, and precipitating a change in policy authorizing overnight family visits for prisoners with life sentences without parole dates. Plaintiff is a life prisoner without a parole date. Plaintiff avers that the change in CDCR policy was made in response to his challenge to the prior policy (Cal. Code Regs. tit. 15, § 3177(b)(2)) on RLUIPA (Religion Land Use and Incarcerated Persons Act) grounds. See Giraldes v. Beard, Case No. 2:14cv1780 CKD P (dismissed as moot after CDCR issued policy change).

Plaintiff is now technically eligible to participate in overnight family visits. However, his requests, like those of other prisoners, are reviewed pursuant to California Code of Regulations, title 15, § 3177(b)(1)(B), which restricts family visits "as necessary to maintain order, the safety of persons, the security of the institution/facility, and required prison activities and operations[.]" Accord, CDCR Department Operations Manual (DOM) § 54020.33.1.

The FAC alleges that defendants, motivated by retaliation against plaintiff for his litigation successes, denied his family visit requests by improperly relying on a 1999 Rules Violation Report (RVR) for marijuana possession, a "nonexclusionary" disciplinary conviction for purposes of determining eligibility for family visits.[2] Previously, in August 2000, a Classifications Staff Representative (CSR) audit rejected an attempt by prison staff to "Re-issue/Re-hear" the 1999 RVR on the following grounds: "Causing C/S [Controlled Substance] brought into CMF [California Medical Facility] for Distribution." Plaintiff alleges that prison officials have nevertheless relied on those rejected grounds to deny his requests for family visits. The FAC asserts a First Amendment retaliation claim against eight officials at CSP-SAC. Plaintiff seeks damages and injunctive relief authorizing plaintiff to participate in future family visits with his wife.

---

[2] Inmate applications for family visits are evaluated under 15 C.C.R. § 3177 and DOM § 54020.33.2. 15 C.C. R. § 3177 provides in pertinent part:

> (b) Family visiting is a privilege. Eligibility for family visiting shall be limited by the assignment of the inmate to a qualifying work/training incentive group as outlined in section 3044.
>
> (1) Family visits shall not be permitted for inmates convicted of a violent offense involving a minor or family member or any sex offense, which includes but is not limited to the following Penal Code sections: 187 (when the victim is a family member as defined in Section 3000 or minor); 192 (when the victim is a family member or minor); 243.4; 261; 261.5, 262; 264.1; 266c; 266j; 273a; 273d; 273.5; 273.6; 285; 286; 288; 288a; 288.2; 288.5; 289; 289.5; 311.1; 311.2; 311.3; 311.4; 313.1; 314; or 647.6.
>
> (A) Inmates may be prohibited from family visiting where substantial documented evidence or information of the misconduct described in section 3177(b)(1) exists, without a criminal conviction. The evidence or information appropriate for the purpose of this regulation shall include rule violation reports as well as the standard described in section 3173.1.

B. Analysis

The court initially notes that any defendant's reliance on an invalid RVR to deny plaintiff family visits under Section 3177 does not, without more, support an actionable claim. Prisoners are not protected from false charges or official reliance on such charges. See Buckley v. Gomez, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (prisoners have no constitutional right to be free from wrongfully issued disciplinary reports), aff'd without opinion, 168 F.3d 498 (9th Cir. 1999). Prisoners do not have a right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under § 1983. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) ("Sprouse's claims based on the falsity of the charges and the impropriety of Babcock's involvement in the grievance procedure, standing alone, do not state constitutional claims."); Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections . . . are provided.").

Moreover, as emphasized by the Supreme Court, state prison restrictions and decisions concerning prisoner visitations are "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Pell v. Procunier, 417 U.S. 817, 827 (1974).

However, a defendant's knowing reliance on an invalid RVR as a pretext for denying plaintiff family visits, motivated by retaliation against plaintiff for his legal endeavors, *does* state a cognizable First Amendment retaliation claim under the standards set forth above. The challenge in screening the instant FAC is the identification of those defendants whose statements and/or conduct support a reasonable inference that their motive was retaliatory.

Plaintiff alleges that defendants' retaliatory motive was first evident when, on March 15, 2017, defendant Ramirez (also spelled Ramerez in the FAC), a correctional counselor (CC),

7

refused to specify the grounds for denying plaintiff's request for a family visit. ECF No. 6 at 6-7. When plaintiff showed Ramirez a copy of the August 16, 2000 chrono invalidating recharacterization of his 1999 RVR, Ramirez reportedly expressed "shock and surprise," said she would resubmit a new application, but allegedly threw it away "or otherwise misplaced it, and left her post as a correctional counselor." Id. at 7. Plaintiff's assertion that Ramirez merely "feigned ignorance" does not support a reasonable inference of retaliatory motive or, therefore, state a cognizable First Amendment claim. **Therefore, this court will recommend the dismissal of defendant Ramirez.**

Thereafter plaintiff submitted an inmate appeal, which was denied at First Level Review on May 10, 2017, in a "memo" prepared by defendant CC Pulley and signed by defendant Baughman, CSP-SAC Warden, following plaintiff's interview with Pulley and defendant Meier, CSP-SAC Associate Warden. Plaintiff alleges that when Pulley attempted to show him the 1999 RVR as the basis for denying plaintiff's requests for family visits, Meier yelled "Stop!" and grabbed Pulley's shoulder, then turned to plaintiff with a smile and said, "You have every right to appeal any issue that you believe adversely [a]ffects you, Giraldes, right? I mean, you ARE the legal beagle of the yard, right?" ECF No. 6 at 8 (original emphasis). Plaintiff contends that this conduct "made it obvious" that Pulley and Meier were acting "in retaliation for plaintiff's litigating the Family Visit issue and other legal efforts." Id. However, this conclusion is not obvious. Moreover, plaintiff concedes that these defendants, in their written memo, "stopped short of admitting they knew" reliance on the subject RVR was inappropriate. Id. Allegations that are "merely consistent" with a legal claim are insufficient to meet the plausibility standard for stating a cognizable claim. Iqbal, 556 U.S. at 678. **For these reasons, the court will recommend the dismissal of defendants Pulley and Meier.**

Plaintiff's allegations against CSP-SAC Warden Baughman are qualitatively different. Plaintiff alleges that both he and his wife wrote letters to Baughman explaining in detail why reliance on the subject RVR was an inappropriate ground for denying plaintiff's requests for family visits. Plaintiff's letter was dated May 21, 2017; his wife's letter was dated June 1, 2017. ECF No. 6 at 7-8. Defendant Baughman reportedly responded in a letter to plaintiff's wife dated

June 15, 2017, with a vague and equivocal statement that plaintiff "may have" an "excluding RVR," id. at 8, and that plaintiff remained guilty of the 1999 offense without designating it the "excluding RVR," id. at 9. Plaintiff alleges that Baughman "knew better" because, in a "prison appeal Memo date 10-15-2016," Baughman acknowledged that reliance on the 1999 RVR was inappropriate based on the August 16, 2000 CSR audit. Id. at 9. Plaintiff's alleges that Warden Baughman was "[e]vidently, so eager to keep plaintiff from the family visits he litigated for . . . that Baughman forgot his previous lies and reasons," demonstrating that he, like the other defendants, was "intentionally, deliberately, and with retaliatory intent, denying the visits on premises [he] knew were false." Id.[3] These allegations satisfy the elements of a retaliation claim: Baughman's allegedly intentional perpetuation of an adverse action against plaintiff in retaliation for his protected conduct, on knowingly false grounds, despite having the authority to investigate and remedy the problem.

Therefore, accepting plaintiff's allegations as true, as required on screening under 28 U.S.C. § 1915A, **the court finds these allegations sufficient to state a cognizable retaliation claim against defendant Baughman in his personal capacity.** See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (a supervisor may be found liable under Section 1983 only if he personally participated in the challenged conduct or knew about, but failed to prevent, the challenged conduct).

////

---

[3] Plaintiff makes the following additional allegations against Baughman at the beginning of the FAC, ECF No. 6 at 5:

> Defendant Baughman, in retaliation for plaintiff litigating and winning Settlements, the Family Visit law suit, and helping other inmates with prison appeals and litigation, did willfully and intentionally, lie in documents and appeals, to ensure plaintiff did not receive his Family Visits. Defendant Baughman cited rules violations as excluding factors, when he knew those violations were not factors CDCR can use to exclude inmates from Family Visits, and knew the other named defendants were doing the same thing. He is liable in his personal capacity due to his intentionally retaliatory conduct not serving any logical, rational, penological, or correctional goal; Baughman's acts were meant to retaliate by using denial of Family Visits, and nothing else.

In his remaining allegations, plaintiff asserts that defendants CC Gonzalez, CC-I Hendricks, CC Cook and CC Lee each relied on the prior denials of plaintiff's family visit requests to deny his current requests. ECF No. 6 at 10-1. In general, like the allegations against Pulley and Meier, these allegations are insufficient to plausibly imply retaliatory motive. Moreover, these defendants' reliance on a prior denial of a family visit request appears to be consistent with CDCR regulations, as subsequent requests are processed differently depending on the outcome of an initial request.[4] Plaintiff contends that the retaliatory motive of these defendants was further demonstrated by an April 2018 search of his cell revealing a less-than-usable amount of marijuana, yet resulting in plaintiff's placement in Ad Seg for "distribution." Plaintiff alleges that defendant Lee thereafter lied in CDCR records and in a declaration filed in this court by stating that plaintiff had two RVRs for marijuana "distribution" (as compared to mere possession). Although plaintiff has pursued several cases in this court, he does not cite the case in which defendant Lee filed an allegedly perjured declaration; in any case, Lee's alleged reliance on CDCR records, truthful or not, is not clearly before this court in the instant case. **The court finds that none of plaintiff's allegations against defendants Gonzalez, Hendricks, Cook and Lee are sufficient to state a cognizable retaliation claim.**

The court is persuaded that plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state a cognizable retaliation claim against any defendant other than Baughman. "A district court may deny leave to amend when amendment would be

---

[4] Pursuant to DOM § 54020.33.2, family visit requests following the granting of the initial request are processed as follows:

> Upon review and approval, the CC-I shall complete a CDC Form 128 B noting the approval and/or restrictions[,] forward a copy to the family visiting coordinator, and record the results in SOMS. After the initial approval, all subsequent requests shall be submitted on a CDC Form 1046, Family Visiting Application, directly to the family visiting coordinator.

In contrast, the same provision requires that the denial of a family visit request be documented as such, rendering the inmate ineligible for family visits:

> If the CC-I finds that based on criteria, the inmate is ineligible; they shall annotate specific reasons for denial on the CDC Form 1046 and in SOMS under "Inmate Case Notes."

futile." Hartmann v.CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013); accord Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) ("Courts are not required to grant leave to amend if a complaint lacks merit entirely."). **For this reason, the court will recommend the dismissal of all defendants but Baughman, and direct plaintiff to submit the information necessary to serve process on defendant Baughman.**

Additionally, the court finds that this case should proceed against defendant Baughman in both his personal and official capacities, the former for plaintiff to pursue his damages claims, the latter for plaintiff to pursue his claim for injunctive relief in the form of future family visits. See Flint v. Dennison, 488 F.3d 816, 825 (9th Cir. 2007) (state officials may be sued in their official capacity for prospective injunctive relief).

V. Conclusion

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's initial request to proceed in forma pauperis, ECF No. 2, is granted.

2. Plaintiff's subsequent request to proceed in forma pauperis, ECF No. 7, is denied as moot.

3. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

4. Service of process of the First Amended Complaint (FAC) is appropriate for defendant Baughman.

5. The Clerk of the Court is directed to send plaintiff one USM-285 form, one summons, an instruction sheet, and one copy of the endorsed FAC (ECF No. 6).

6. Within thirty (30) days after service of this order, plaintiff shall complete the attached Notice of Submission of Documents and submit the following documents to the court:

    a. The completed Notice of Submission of Documents;

    b. One completed summons;

11

    c. One completed USM-285 form; and

    d. Two copies of the endorsed FAC (the U.S. Marshal will retain one copy).

  7. Plaintiff shall not attempt service on defendant or request waiver of service. Upon receipt of the above-described documents, the court will direct the United States Marshal to serve defendant Baughman pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

  8. Failure of plaintiff to timely comply with this order will result in the dismissal of this action without prejudice.

  9. The Clerk of Court is directed to randomly assign a district judge to this action.

  Additionally, for the reasons previously stated, IT IS HEREBY RECOMMENDED that defendants Ramirez, Pulley, Meier, Gonzalez, Hendricks, Cook and Lee be dismissed from this action.

  These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 11, 2019

                _/s/ Allison Claire_
                ALLISON CLAIRE
                UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY GIRALDES, JR.,

        Plaintiff,

   v.

D. BAUGHMAN, et al.,

        Defendants.

No. 2:18-cv-1055 AC P

<u>NOTICE OF SUBMISSION</u>

    Plaintiff submits the following documents in compliance with the court's order filed _____:

    \_\_\_\_    one completed summons

    \_\_\_\_    one completed USM-285 form

    \_\_\_\_    two copies of the endorsed SAC

_____        _____
Date                                                                   Plaintiff

1